IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROBERT S. THOMPSON,
      Petitioner,

vs.                                 Case No.:  5:10cv186/MCR/EMT

KENNETH S. TUCKER,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 23).  Petitioner is represented by counsel in this matter.  Respondent filed an answer and relevant portions of the state court record (doc. 29).  Petitioner filed a reply (doc. 32).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 29).[2]  Petitioner was charged in the Circuit Court in and for Bay County,

---

[1] Kenneth S. Tucker succeeded Edwin G. Buss as Secretary for the Department of Corrections.  Secretary Tucker is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 29).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida, Case No. 2008-CF-0281, with one count of solicitation to commit first degree murder (Ex. A). Petitioner entered a written plea agreement pursuant to which he agreed to enter a plea of nolo contendere as charged, in exchange for the State's agreement to enter a nolle prosse to charges of aggravated stalking, violation of a domestic violence injunction, and criminal mischief in a separate case, Case No. 2008-CF-0108 (Ex. B).[3] In a proceeding held October 2, 2008, the state court conducted a colloquy and accepted Petitioner's plea (Ex. C). The court sentenced Petitioner, pursuant to the plea agreement, to eight (8) years of imprisonment, with pre-sentence jail credit of 236 days, followed by twelve (12) years of probation (Exs. C, D).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D08-6169 (Ex. E). The First DCA dismissed the appeal on February 3, 2009, for Petitioner's failure to comply with an order of the court (*id.*).

On November 21, 2008, Petitioner filed a counseled motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. F). The state circuit court summarily denied the motion on January 15, 2010 (Ex. J). Petitioner, through counsel, appealed the decision to the First DCA, Case No. 1D10-1717 (Exs. K, L). The First DCA affirmed the decision per curiam without written opinion on June 23, 2010, with the mandate issuing July 9, 2010 (Ex. N). Thompson v. State, 37 So. 3d 855 (Fla. 1st DCA 2010) (Table).

Petitioner, through counsel, filed the instant federal habeas action on July 8, 2010 (doc. 1). Respondent does not contest the timeliness of the petition (doc. 29 at 6).

## II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and

---

[3] In both cases, the victim was Petitioner's estranged wife, Patricia Thompson (*see* Ex. D at 186–87, 189; Ex. J at 306).

Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.

In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed

---

[4] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether

its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").   The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[5] thereby giving

---

[5] Section 2254 provides, in pertinent part:

(b)(1)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
          (A)  the applicant has exhausted the remedies available in the courts of the State; or
          (B) (i)  there is an absence of available State corrective process; or
                 (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law

---

. . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the underlined cited case advanced a federal claim.  *Id.*, 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[6]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the

---

[6] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[7]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. Id. at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." Id.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. See O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural

---

[7] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[8]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.

---

[8] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

*Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

> Ground One: "Involuntary Plea: Defendant Thompson was not informed by his trial counsel that the theory of entrapment was a possible defense prior to the entry of the plea. But for trial counsel's failure to inform Defendant Thompson of the entrapment defense, Defendant Thompson would have proceeded to trial. As a result, Defendant Thompson's 4th, 5th, and 6th Amendment rights were violated."

> Ground Two: "Ineffective Assistance of Counsel: Failure to Investigate, Pursue and/or Produce Defense Witnesses. But for trial counsel's ineffectiveness, Defendant Thompson would not have entered a plea and would have proceeded to trial. Counsel's ineffectiveness otherwise deprived Defendant Thompson of his 6th Amendment right to effective assistance of counsel at all material stages of litigation."

In Ground One, Petitioner asserts the State's case against him largely relied on the testimony and cooperation of a jailhouse informant, Alexander Redburn (doc. 23 at 7).  Petitioner asserts Mr. Redburn constantly and unilaterally contacted him in an attempt to convince Petitioner to kill his own wife (*id.*).  Petitioner suggests Mr. Redburn attempted to contact him 75–100 times, but Petitioner refused his enticements (*id.*).  Petitioner asserts Mr. Redburn eventually elicited enough incriminating evidence against him to support probable cause for the issuance of an arrest warrant (*id.*).  Petitioner asserts he was suffering from clinical depression during the relevant time, as demonstrated by his post-arrest psychological report (*id.*).  He states at the time of the entry of his plea and the colloquy conducted by the trial court, defense counsel had not informed him that entrapment was a complete defense to the crime (*id.*).  Petitioner states if counsel had informed him of the availability of an entrapment defense, he would not have entered a plea and would have insisted on proceeding to trial (*id.*).

In Ground Two, Petitioner asserts that prior to entering his plea, he provided the names of three witnesses, whom he believed were relevant and material to his case, namely, David Locke, Moses Ortiz, and Carl Rutherford (doc. 23 at 9).  Petitioner states these witnesses would have provided exculpatory, or at least mitigating, evidence (*id.*).  Specifically with regard to Mr. Locke, Petitioner states he was available and willing to testify that he observed Mr. Redburn attempt to contact Petitioner 75–100 times and entice him into committing the crime (*id.*).  Petitioner states Mr. Locke also would have testified that Mr. Redburn admitted to him that he was attempting to entice Petitioner in order to receive a reduction of his own sentence from the State (*id.*).  Petitioner alleges Mr. Locke volunteered this information to Petitioner and defense counsel; and although counsel spoke to Mr. Locke, counsel was "short and dismissive," and Mr. Locke's words "fell on deaf ears" (*id.* at 10).  Petitioner contends counsel's failure to thoroughly investigate Mr. Locke, consider the substance of his statements, and "otherwise produce his testimony" was deficient; and but for counsel's error, he would have proceeded to trial (*id.*).

Respondent argues Petitioner failed to exhaust either of these claims (doc. 29 at 11–17, 26–28).  Respondent states Petitioner presented each claim in his Rule 3.850 motion, but he did not argue either of these claims on appeal of the lower court's summary denial of the motion; instead, Petitioner argued only a procedural issue (*id.*).  Therefore, according to First DCA precedent,

Petitioner waived appellate review of the merits of his claims (*id.*).  Respondent thus argues the claims are procedurally barred from federal review (*id.*).  Without waiving the exhaustion defense, Respondent argues Petitioner failed to demonstrate that the state court's adjudication of the claims was contrary to or an unreasonable application of clearly established federal law (*id.* at 17–25, 28–33).

In Petitioner's reply, he argues he exhausted his claims because his post-conviction appellate brief addressed both the procedure with which the lower court disposed of his claims and the substance of his claims (doc. 32 at 2–3).

The First DCA, the state court in which Petitioner filed his post-conviction appeal, requires an appellant who files a brief when appealing a summarily denied post-conviction motion, to address all arguments in his brief that he wishes to preserve for appellate review.  *See* Watson v. State, 975 So. 2d 572, 573 (Fla. 1st DCA 2008); *see also* Cook v. State, 638 So. 2d 134, 135 (Fla. 1st DCA 1994).[9]  However, if an appellant does not file a brief when appealing, the appellate court is required to investigate all possible means of relief.  *Id.* n.1; *see also* Fla. R. App. P. 9.141(b)(2).

In the instant case, the state court record demonstrates that in Petitioner's Rule 3.850 motion, he raised the same two claims of ineffective assistance of counsel that he raises in his federal petition (Ex. F).  The state circuit court summarily denied his claims (Ex. J at 167–310).  Petitioner appealed the decision to the First DCA and chose to file an appellate brief (Ex. L).  The only issue he argued was that the lower court erred by failing to hold an evidentiary hearing, as required by Rule 3.850(d) and state and federal due process principles, because his claims were facially sufficient and not refuted by the record (*id.*).  The First DCA affirmed the circuit court's decision without written opinion (Ex. N).

As previously discussed, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of

---

[9] The Eleventh Circuit held, albeit in an unpublished opinion, that when a Florida defendant does not receive an evidentiary hearing in his Rule 3.850 proceeding and appeals the circuit court's decision denying his motion, he satisfies the federal exhaustion requirement as to all claims raised in his Rule 3.850 motion, even if he files a brief and fails to address each issue in his appellate brief.  *See* Darity v. Sec'y, Dep't of Corr., 244 Fed. Appx. 982, 984, 2007 WL 2274618 (11th Cir. 2007) (emphasis added); Cortes v. Gladish, 216 Fed. Appx. 897, 899–900, 2007 WL 412484, at *2 (11th Cir. 2007).  However, the Florida case upon which the Eleventh Circuit relied in Darity and Cortes, that is, Webb v. State, 757 So. 2d 608 (Fla. 5th DCA 2000), is no longer the decisional law of the Fifth DCA.  *See* Ward v. State, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009) (en banc).

the State's established appellate review process." O'Sullivan, 526 U. S. at 845.  In the instant case, Petitioner's initial brief in his post-conviction appeal was filed April 30, 2010, well after Watson was decided and after the law of the Fifth DCA changed.  Therefore, to obtain appellate review of the federal claims raised in his summarily denied Rule 3.850 motion, he was required to raise and fully address the merits of those issues in his appellate brief.  *See* Watson, 975 So. 2d at 573.  *Cf.* Daniels v. Sec'y, Dep't of Corr., No. 6:10cv200-ACC-KRS, 2010 WL 5297167, at *7 (M.D. Fla. Dec. 20, 2010) (recognizing that Webb was receded from in Ward, but holding that Webb was applicable to federal petitioner's claim, because his state post-conviction appeal pre-dated Ward). In Petitioner's appellate brief, he did not raise substantive arguments as to the circuit court's rejection of his ineffective assistance of counsel claims on the merits.  Instead, he argued purely a procedural issue, that is, that the lower court erred under Rule 3.850(d) and deprived him of his state and federal due process rights by entering a summary judgment and failing to hold an evidentiary hearing, because his claims were legally sufficient and unrefuted by the record (Ex. L at 4–17). Petitioner asked the First DCA to reverse the lower court's summary denial and remand with instructions to conduct an evidentiary hearing on the merits of his claims (*id.* at 4, 6, 9, 16–17). Petitioner's having chosen to seek appellate review of only a state procedural issue, not the federal constitutional issues raised in his Rule 3.850 motion, he failed to invoke the state court's established appellate review process as to his constitutional claims and thus did not properly present them to the state court.

Any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, because a second appeal is unavailable, and any further attempt to raise the claims in another Rule 3.850 motion would be subject to dismissal as successive.  *See* Fla. R. Crim. P. 3.850(f).  Therefore, Grounds One and Two are procedurally defaulted.

As discussed *supra*, to overcome a procedural default such that this court may consider the merits of his claims, Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  Petitioner has not alleged cause for his default; nor has he alleged he is entitled to review of his claim through

the "fundamental miscarriage of justice" exception to the procedural bar.  Therefore, Grounds One and Two are procedurally barred from federal review.[10]

Even if Petitioner's argument on post-conviction appeal constituted proper exhaustion of the substance of his ineffective assistance of counsel claims, he has failed to demonstrate that the state court's adjudication of the claims was based upon an unreasonable determination of the facts or contrary to or an unreasonable application of clearly established federal law.

1.    Clearly Established Federal Law

When a defendant challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668 (1984) applies. See Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).  To obtain relief under Strickland, Petitioner must establish:  (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 688.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  Id. at 697; Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances."  See Strickland, 466 U.S. at 691.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

_____

[10] Moreover, to the extent Petitioner raises here the claim he presented to the First DCA in his post-conviction appeal, that is, the alleged procedural defect in the initial Rule 3.850 proceeding, his claim does not present a basis for federal habeas relief.  See Quince v. Crosby, 360 F.3d 1259, 1261–62 (11th Cir. 2004) (defects in collateral proceedings are unrelated to the actual cause of petitioner's custody, and do not state a basis for habeas corpus relief); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (state court's failure to hold a hearing on Rule 3.850 motion and failure to attach relevant portions of the record to its order were unrelated to the cause of detention, and did not state a basis for § 2254 relief).

time." *Id.* at 689.  Indeed, the Supreme Court warned about second-guessing professional judgments

made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the
> making of difficult judgments.  All the pertinent facts normally cannot be known
> unless witnesses are examined and cross-examined in court.  Even then the truth will
> often be in dispute.  In the face of unavoidable uncertainty, the defendant and his
> counsel must make their best judgment as to the weight of the State's case.  Counsel
> must predict how the facts, as he understands them, would be viewed by a court. . .
> .  Questions like these cannot be answered with certitude; yet a decision to plead
> guilty must necessarily rest upon counsel's answers, uncertain as they may be.
> Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably
> competent attorney will turn out to be mistaken either as to the facts or as to what a
> court's judgment might be on given facts.  That a guilty plea must be intelligently
> made is not a requirement that all advice offered by the defendant's lawyer withstand
> retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

In a plea situation, counsel must provide advice "within the range of competence demanded

of attorneys in criminal cases."  Hill, 474 U.S. at 56–57 (quoting McMann, 397 U.S. at 771).  Under

this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty

when advising the accused.  Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991).  Absent

such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct

fell within the wide range of reasonably professional assistance."  Yordan v. Dugger, 909 F.2d 474,

477 (11th Cir. 1990).  The Eleventh Circuit has commented that "[t]he right to competent plea

bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make

a wise decision" without assistance of counsel or a "bad one despite superior advice from his

lawyer."  Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  "[C]ounsel

owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the

former case counsel need only provide his client with an understanding of the law in relation to the

facts, so that the accused may make an informed and conscious choice between [entering a plea] and

going to trial."  *Id.*  This requires counsel to "offer his informed opinion as to the best course to be

followed" and impart "a general knowledge of the possible legal consequences of facing trial" to

the defendant.  *Id.*  Therefore, a defendant's failure to "correctly assess every relevant factor entering

into his decision" does not undermine a validly entered guilty plea.  *Id.* at 1509.

To meet the prejudice prong of the <u>Strickland</u> standard in a plea situation, Petitioner must establish that prove that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  <u>Hill</u>, 474 U.S. at 59.  Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different.  *Id.* at 59–60.  While counsel can be deemed ineffective under <u>Strickland</u> for failing to provide proper advice during the plea process, Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  *See* <u>Diaz v. United States</u>, 930 F.2d 832, 835 (11th Cir. 1991); <u>Toro v. Fairman</u>, 940 F.2d 1065, 1068 (7th Cir. 1991).  A conclusory, after-the-fact statement that Petitioner would not have pled guilty, without more, is insufficient to establish prejudice under <u>Strickland</u>.  *See* <u>Diaz</u>, 930 F.2d at 835; *see also* <u>Coulter v. Herring</u>, 60 F.3d 1499, 1504 (11th Cir. 1995) (though Coulter evidenced, through his counteroffer to the state, a willingness to enter into a plea agreement, he offered no further proof to show that he would have accepted the state's plea offer of life without parole absent his lawyers' alleged errors; therefore, Coulter failed to establish any prejudice stemming from counsel's alleged deficient performance); <u>Johnson v. Duckworth</u>, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

> 2.      Federal Review of State Court Decision

Petitioner raised both of his claims in his Rule 3.850 motion (Ex. F).  The state circuit court adjudicated the claims as follows:

> On October 29, 2009, the Defendant filed the instant Motion for Postconviction Relief, raising two grounds for relief.  In Ground One, the Defendant claims that his plea was involuntary because he was not informed by his counsel that the theory of entrapment was a possible defense prior to entering the plea.  He claims that, but for counsel's failure to inform him of the entrapment defense, he would not have entered the plea and would have proceeded to trial.  The Defendant claims that Mr. Redburn constantly and unilaterally contacted him between 75 and 100 times in an attempt to convince the Defendant to kill his own wife.  He claims that he consistently refused Mr. Redburn's enticements; however, Mr. Redburn eventually

solicited enough incriminating evidence against him to support the issuance of an arrest warrant. He claims that he has no prior criminal record and was suffering from depression, and that counsel did not inform him for [sic] the possibility of presenting an entrapment defense.

In order to succeed on a claim of ineffective assistance of counsel, a defendant must show both deficient performance by counsel and prejudice resulting from that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When a defendant challenges his guilty pleas based on ineffective assistance of counsel, under the prejudice prong of *Strickland*, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would have not pleaded guilty and would have insisted on going to trial." *Stephens v. State*, 975 So. 2d 405 (Fla. 2007) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). To determine whether a reasonable probability exists that the defendant would have insisted on going to trial, a court should examine the totality of the circumstances surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the Defendant and the trial court at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at trial. *Id.*; *see also Velazquez v. State*, 973 So. 2d 1206, 1207 (Fla. 2nd DCA 2008) (specific context of failure of counsel to advise the defendant of entrapment defense, *citing Grosvenor* [*v. State*, 874 So. 2d 1176, 1181–82 (Fla. 2004)].

The first factor, whether the particular defense, in the instant case entrapment, was likely to succeed at trial, weighs against the finding that there is a reasonable probability that the Defendant would have rejected the plea and insisted on going to trial. The Defendant does not specify whether he is referring to an objective entrapment or subjective entrapment defense; however because the Defendant does not allege any egregious law enforcement conduct and because he alleges that he was an honorably discharged military Captain with no prior criminal history, it appears he is relying on upon a subjective entrapment defense. *See State v. Henderson*, 955 So. 2d 1193, 1194 (Fla. 4th DCA 2007). The elements of subjective entrapment defense have been codified in Fla. Stat. 777.201, and under that theory, the first question that must be addressed is "whether an agent of the government induced the accused to commit the offense charged." *Id.* at 1194–1195 (*citing Munoz v. State*, 629 So. 2d 90, 99 (Fla. 1993)); *see also*, Fla. Stat. 777.201. It is the Defendant who bears the burden of proof with this issue and who must establish inducement by preponderance of the evidence. *Henderson*, *supra*, at 1194–1195. It is only when this question is resolved in the affirmative that the two remaining questions must be addressed: (1) whether the accused was predisposed to commit the offense charged and (2) whether the matter of subjective entrapment should be put to the jury. *Id.*

First, the Defendant could not have shown that an agent of the government induced him to commit the alleged offense.  The police reports in the case clearly show that Mr. Redburn had no contact with law enforcement until the Defendant had already solicited Mr. Redburn to kill the Defendant's wife, the Defendant had posted a bond for Mr. Redburn to be released from jail, and Mr. Redburn was already out of jail.  *See* Attachments.  No good faith argument can be made that Mr. Redburn was acting as an agent of the government before he contacted the police, which was after he already was out of jail.  The Defendant's motion alleges that Mr. Redburn pressured him, constantly contacting him in order to convince him to allow Mr. Redburn to kill his wife, and alleges that Mr. Redburn attempted to contact him between 75 and 100 times.  Thus under the Defendant's own factual allegations, all of the alleged harassing/enticement done by Mr. Redburn had to have occurred while the Defendant, Mr. Redburn, and David Locke were in the Bay County Jail together.  As Mr. Redburn had no contact with the police and did not begin working with them until after he was out of jail, the Defendant could not have shown that an agent of the government induced him to commit the alleged offense, which is required under the statute.

Additionally, the Defendant's allegations that Mr. Redburn attempted to contact him between 75 and 100 times, all of which the attempted contacts were allegedly observed by David Locke, is highly suspect, considering that the Defendant was arrested on the charges in case number 08-108 on January 10, 2008 and posted bond on those charges the very next day, January 11.  *See* Attachments.  This single day would have been the entire period of time prior to his arrest on the instant solicitation charge, when the Defendant was in jail with Mr. Redburn and David Locke.  Further, if the Defendant wanted to keep Mr. Redburn from allegedly harassing him, and pressuring him to agree to have his wife killed, he could have left Mr. Redburn in jail, particularly after the Defendant himself had bonded out of jail and was away from Mr. Redburn.  Instead, the Defendant posted Mr. Redburn's bond ensuring his release.  *See* Attachments.  As outlined above, to establish a subjective entrapment defense, a defendant must show that he was not predisposed to commit the alleged offense.  *See Jimenez v. State*, 993 So. 2d 553, 555 (Fla. 2nd DCA 2008); Fla. Stat. § 777.201.  While the Defendant alleges that he was an honorably discharged Air Force Captain with no criminal record when he was allegedly approached by Mr. Redburn, he fails to note that he was on pretrial release for Aggravated Stalking, Criminal Mischief, and Violation of an Injunction for Protection Against Domestic Violence, all involving the same victim his estranged wife, when he was charged with soliciting her murder.  Further, the police reports in this case reflect that Mr. Redburn was not the only inmate the Defendant bonded out of jail.  The Defendant also posted bond for inmate Chico Porter, and similarly to Mr. Redburn, told Mr. Porter that he would bond him out of jail, and wanted Mr. Porter to do something for him once he was released.  *See* Attachments.  Mr. Porter

never found out what the Defendant wanted, but clearly the Defendant intended to harm his wife regardless of whether Mr. Redburn agreed to participate.

Furthermore, the record reflects that counsel intended to pursue an insanity defense if the Defendant had not entered a plea.  Counsel had filed a "Notice of Intent to Rely on Defense of Insanity", and had attached a psychological evaluation of the Defendant as a reciprocal discovery response.  *See* Attachments.  An entrapment defense would have been inconsistent with the defense of insanity.  *See, e.g.*, *Haq v. State*, 997 So. 2d 1284, 1285 (Fla. 4th DCA 2009) (noting that the entrapment defense requires that the defendant admit he was a knowing participant in the crime).

The second and third factors also demonstrate that there was not a reasonable probability that the Defendant would have insisted on a trial.  The colloquy between the Defendant and the Court when the plea was entered reflects that the plea was voluntary.  *See* Attachments.  This Court repeatedly discussed with the Defendant his plea and the consequences of the plea.

> "You can ask any question that you want because I don't want you to complain later on.  I'm not upset about anything.  I'm just trying to make sure we do this properly because I don't want to try this again. I don't want you to complain later that you were forced to enter this plea.  If you want to do this plea, that's fine.  If you don't want to do this plea that's also fine.  You can go to trial."

Plea Transcript, pg. 11.

The Defendant wanted to discuss Mr. Redburn stating, ". . . that statement saying Alex Redburn, it's a wonderful statement for the State, but Alex Redburn with 10 felonies and had 3 felonies at them time [sic], had a great plea bargain and is out on the streets on it from it, so he can testify."  The Court responded, "Do you want to — go to trial, sir?  I mean, that's up for a jury to decide."  *Id.* at 12.  As the Defendant seemed hesitant in his initial conversation with the Court, the Court said, "Tell me a few more things.  I'm not going to accept the plea because you don't seem satisfied and firm in your mind that that's what you want to do.  You need to tell me whether you want to do this or you don't.  Either way, it's fine, but you can't complain later if you take it.  You can't complain later if you go to trial and it doesn't work out the way you want it to either."  *Id.*  The Defendant responded that he wanted to accept the plea agreement and enter the plea, with the understanding that the case is over, which includes discussion of Mr. Redburn.  *Id.* at 12–14. Again, at the end of the plea colloquy, the Court again reiterated to the Defendant that he can go to trial, "And, again, if you don't want to accept it, I can — it's not over yet.  If you don't want to do this, if you think you're being treated improperly,

then don't agree. You can go to trial. It's up to you. . . Do you want me to go ahead and sentence you." The Defendant responded, "Yes, ma'am". *Id.* at 16–17. The Defendant was given several opportunities to discuss his concerns with the Court and choose to go to trial. The Defendant stated multiple times he wanted to enter the plea. The record reflects that the Defendant's plea was intelligently and voluntarily given.

Regarding the sentence imposed, the Defendant received the negotiated sentence of 8 years imprisonment, followed by 12 years of probation with early termination possible after 6 years, when he was facing up to 30 years imprisonment. Additionally, the State agreed to drop the charges in case 08-108, for which the Defendant could have received an additional 7 years of imprisonment. Facing a total of 37 years imprisonment in the two cases, the Defendant received a relatively favorable sentence of 8 years imprisonment, followed by a 12-year probationary term that could be terminated after only 6 years if the Defendant did not violation [sic] probation. Under the totality of the circumstances, as reflected in the attachments, the Defendant has not shown deficient performance by counsel, and cannot show prejudice, as he has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, he would not have entered a guilty plea and would have insisted on going to trial.

In Ground Two, the Defendant claims that his counsel was ineffective in failing to investigate, pursue, or produce defense witnesses. He claims that he provided counsel with the names of three material witnesses, David Locke, Moses Ortiz, and Carl Rutherford, who were "at most exculpatory, and at least mitigating" but that counsel never investigated them or interviewed them. The Defendant claims that all three were "relevant and material", but does not state specifically what the testimony of Ortiz and Rutherford would have been, and does not allege that they were available to testify. As to Locke, he claims that Locke was an inmate familiar with Mr. Redbum and would have testified that he observed Mr. Redburn attempt to entice the Defendant and attempt to contact him 75 to 100 times, and that Mr. Redburn stated that he was attempting to entice the Defendant into committing a crime in order to receive a sentence reduction.

First, because the Defendant entered a plea, he is barred from contesting it on the grounds that counsel failed to investigate his case. This is an impermissible attempt to go behind the plea agreement. *Davis v. State*, 938 So. 2d 555 (Fla. 1st DCA 2006), *Henry v. State*, 679 So. 2d 885, 886 (Fla. 5th DCA 1996) (citing *Stano v. State*, 520 So. 2d 278 (Fla. 1998)). Second, even in a trial context, in order to assert a facially sufficient claim of ineffective assistance of counsel for failure to call a witness, a defendant must (1) indentify [sic] the prospective witness, (2) describe the substance of the witness's testimony, (3) state that the witness was available to testify, and (4) describe the prejudice resulting from omitting the witness's

testimony.  *See Petz v. State*, 917 So. 2d 381, 382–383 (Fla. 2d DCA 2005) (citing *Nelson v. State*, 875 So. 2d 579, 582–583 (Fla. 2004)).  As to Moses Ortiz and Carl Rutherford, the Defendant has not described the substance of their testimony and has not alleged that they were available to testify.  Third, the record reflects that counsel did investigate the potential testimony of David Locke and Carl Rutherford.  In the "Defendant's First Reciprocal Discovery Response," filed on April 4, 2008, defense counsel listed Locke and Rutherford as witnesses that may be called at trial by the Defendant, and provided their locations.  *See* Attachments.  That the Defendant chose to enter a plea before formal depositions could be taken does not show that defense counsel was unaware of these witnesses or had not investigated them; to the contrary, the reciprocal discovery notice indicates otherwise.  Fourth, for the reasons discussed above in Ground One, David Locke's testimony would not have been helpful to the Defendant, considering the wealth of evidence against him, particularly the recorded phone call and face-to-face meeting, and the fact that David Locke would only have had information relevant to less than [a] 24-hour period occurring early on in the criminal activity.

The record reflects that the Defendant's plea was knowingly, voluntarily, and intelligently given.  Additionally, the Defendant has failed to satisfy either prong of [the] *Strickland v. Washington*, 466 U.S. 668 (1984), test regarding ineffective assistance of counsel in Defendant's Motion for Postconviction Relief.  Therefore, the Defendant's Postconviction Relief Motion is due to be denied.

(Ex. J at 167–72).

Petitioner appealed the state circuit court's decision to the First DCA.  The appellate court affirmed per curiam without written opinion.

Petitioner argues defense counsel's failure to advise him of the availability of an entrapment defense and failure to investigate Mr. Locke, Mr. Ortiz, and Mr. Rutherford as potential witnesses caused him to enter a plea he otherwise would not have entered (doc. 32 at 4–8).  He argues the plea colloquy demonstrates his plea was entered "with hesitation, reluctance, and unanswered questions" and was thus involuntary (*id.* at 5).

Petitioner does not dispute the state court's factual findings, and he has not presented clear and convincing evidence rebutting them; therefore, the court's factual findings are presumed correct.  *See* 28 U.S.C. § 2254(d)(2), (e)(1).  Additionally, the state court correctly cited the two-prong Strickland standard as the applicable legal standard (Ex. J at 168).  Thus, Petitioner is not entitled to federal habeas relief unless he demonstrates the state court unreasonably applied Strickland in adjudicating his claims.

As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.   *See* Gill,  633 F.3d at 1287 (citing Harrington, 131 S. Ct. at 786).  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

With regard to counsel's failure to advise Petitioner that entrapment was an available defense to the charge,  although Florida law recognizes an entrapment defense, *see* Florida Statutes §777.201, the state court in Petitioner's case concluded that he failed to show an entrapment defense was available in his case, because there was no evidence that an agent of the government induced him to commit the solicitation as required under the statute, and there was evidence suggesting Petitioner was predisposed to soliciting his wife's murder.  Petitioner's argument that the state court unreasonably applied Supreme Court law with regard to the validity of his no contest plea obviously depends upon this court's determining that Petitioner's plea was entered without a full awareness of this state law defense, but first this court would have to conclude that the state court misinterpreted Florida's entrapment statute.  This court will not second-guess the state court on such matters.  *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); Herring v. Sec'y, Dept. of Corr., 397 F.3d 1338, 1355 (11th Cir. 2005) ("It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.' ") (quoting Agan v.

Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997)); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).

The Florida state courts have already told this court how the issue would have been resolved under state law had Petitioner asserted an entrapment defense—the defense would have been rejected. The state court's binding determination of Florida law means that Petitioner's lack of awareness of that defense had no effect on the validity of his plea.

As to Petitioner's related challenge to his plea on the ground that counsel performed ineffectively by failing to investigate Mr. Locke, Mr. Ortiz, and Mr. Rutherford as defense witnesses to support an entrapment defense, Petitioner failed to show that counsel's alleged failure to investigate was unreasonable. Petitioner submitted Mr. Locke's affidavit, dated September 16, 2010, as an attachment to his federal habeas petition (doc. 23 at 17). The affidavit states:

> I first met Robert Thompson when he was initially detained in the case before this Court. Alexander Redburn, Mr. Thompson and I were housed in the same pod. Prior to approaching Mr. Thompson, Alexander Redburn informed me of his intent to intimidate, influence and convince Mr. Thompson to make numerous telephone calls and perhaps convince Mr. Thompson to take some action. Although I cannot identify any specific person, Mr. Redburn was clearly cooperating with someone from the State Attorney's Office in an attempt to receive a reduction of sentence or leniency.
>
> Near the time of Mr. Thompson's original arrest, I provided a similar statement to Mr. Thompson's trial attorney, Jonathan Dingus. Subsequent to this statement, I learned that my statement was not used or given to the presiding judge in Mr. Thompson's case. Although I am not an attorney, I strongly believe that the information I have, and the statements and overt acts I witnessed Mr. Redburn take to set Mr. Thompson up, are relevant to Mr. Thompson's case and should be considered accordingly. If necessary, I remain willing and able to testify in more detail to the allegations contained in this affidavit.

(doc. 23 at 17).

Mr. Locke's mere suspicion that Mr. Redburn was cooperating with someone from the prosecutor's office at the time Redburn allegedly enticed Petitioner to solicit his wife's murder was insufficient to impose a duty upon counsel to investigate Mr. Locke as a potential witness to support an entrapment defense. Further, Petitioner's unsupported assertion that Mr. Rutherford and Mr. Ortiz would have provided evidence favorable to an entrapment defense is insufficient to show that

defense counsel's failure to investigate them was a decision no competent counsel would have made. *See* Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978) ("Complaints of uncalled witnesses are not favored, . . . because allegations of what a witness would have testified are largely speculative.").[11]  In state court, Petitioner did not allege the nature of the testimony Mr. Ortiz or Mr. Rutherford would have given, other than to state they were "relevant and material to [Petitioner's] case" and that their testimony "may" be exculpatory (Ex. I at 162, 165).  Because Petitioner failed to show that defense counsel's failure to investigate these witnesses was unreasonable, his contention that his plea was the result of ineffective assistance of counsel fails.

In light of the record, the state court reasonably concluded that Petitioner failed to demonstrate his plea was unknowing and involuntary due to counsel's failure to advise him of the availability of an entrapment defense and failure to investigate Mr. Ortiz, Mr. Rutherford, and Mr. Locke as potential witnesses.  Therefore, Petitioner is not entitled to federal habeas relief.

V.     CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

---

[11] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Edwin G. Buss as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the amended petition for writ of habeas corpus (doc. 23) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 12th day of June 2012.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**